UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RICHARD J. KRAMER,                                    **REPORT**
CHRISTOPHER GATES,                                     **and**
GLEN E. WEBSTER, Individually and on behalf of    **RECOMMENDATION**
Nominal Defendant Armor Electric Motor         ------------------------------
& Industrial Services, Inc.,                             **DECISION**
                              Plaintiffs,                   **and**
              v.                                          **ORDER**[1]

THOMAS M. PAWLAK,                                  **12-CV-813A(F)**
LISA PAWLAK,
ARMOR ELECTRIC MOTOR & INDUSTRIAL
SERVICES, INC.,
                              Defendants.

_____

APPEARANCES:              HODGSON RUSS LLP
                          Attorneys for Plaintiffs
                          JOSEPH V. SEDITA,
                          REETUPARNA DUTTA,
                          KEVIN J. ESPINOSA,of Counsel
                          The Guaranty Building
                          140 Pearl Street, Suite 100
                          Buffalo, New York   14202

                          ANDREOZZI, BLUESTEIN, FICKESS, MUHLBAUER,
                          WEBER, BROWN LLP
                          Attorneys for Defendants
                          RANDALL P. ANDREOZZI, of Counsel
                          9145 Main Street
                          Clarence, New York   14031

                          GRASHOW LONG
                          Attorneys for Defendants
                          STEVEN K. LONG, of Counsel
                          5780 Main Street
                          Williamsville, New York 14221

---

[1] Because the motion for expedited hearing is non-dispositive and the motions for temporary restraining order and preliminary injunction are dispositive, the motions are addressed in this combined Report and Recommendation and Decision and Order.

**JURISDICTION**

By order filed September 6, 2012, this matter was referred to the undersigned by Hon. Richard J. Arcara for all pretrial proceedings, pursuant to 28 U.S.C. § 636(B)(1)(A) and (B) (Doc. No. 5).  It is presently before the court on Plaintiff, Richard J. Kramer's, motion for a temporary restraining order and preliminary injunction (Doc. No. 7) ("Kramer's motion") and *ex parte* motions for expedited hearings (Doc. No. 8, 9) ("Kramer's motions to expedite") filed September 18, 2012.

**BACKGROUND AND FACTS**[2]

This action was commenced upon a summons and verified complaint filed in New York Supreme Court, Erie County, New York, on August 9, 2012 alleging violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("First Claim"), asserting Defendants engaged in mail and wire fraud (21 U.S.C. §§ 1341, 1343) based on Defendants' scheme to defraud Plaintiffs Richard J. Kramer ("Kramer"), Christopher Gates ("Gates") and Glen E. Webster ("Webster") (together, "Plaintiffs"), as well as Armor Electric Motor & Industrial Services, Inc. ("Armor Electric" or "Armor"), a closely-held (Sub-Chapter S) corporation ("the corporation") of which Defendants Thomas M. Pawlak and Lisa Pawlak ("Thomas Pawlak" and "Lisa Pawlak," collectively "the Pawlaks" or "Defendants") are majority shareholders and Plaintiffs are minority shareholders.  Armor Electric provides industrial motor refurbishing and crane equipment services, fabrication, controls, and balancing.  Since it was organized in

---

[2]Taken from the pleadings and papers filed in this action.

2

2005 by Plaintiffs Kramer and Gates and the Pawlaks, it has increased revenues to $5 million from $750,000 and has now approximately 22 employees compared to four in 2005.  Thomas Pawlak owns no shares in the corporation but serves as its president and chief executive officer; Lisa Pawlak owns 54.98% of the shares and serves as secretary.  Kramer serves as vice-president and owns 26.41%; Gates serves as vice-president and treasurer and owns 12.60%; and Webster serves as vice-president and owns 6% of the shares of the corporation.

Plaintiffs also assert state law claims of breach of fiduciary duty owed to Plaintiffs and the corporation, based on Lisa Pawlak's position as majority shareholder and secretary and Thomas Pawlak's status as Armor Electric's president and chief executive officer and Defendants' improper transfer of the corporation's assets, including payment of approximately $227,000 for Defendants' personal expenses such as luxury automobiles and excessive salaries ("Second Claim").  Plaintiffs also allege claims for conversion of the corporation's property and assets ("Third Claim") and fraud ("Fourth Claim") based on Defendants' misrepresentation concerning the nature of approximately $150,000 of expenses incurred on behalf of the corporation and Defendants' alleged refusal to provide Plaintiffs with access to corporate books and records.  Defendants removed the action to this court on August 29, 2012.  Defendants' answer was filed September 5, 2012 asserting defenses and a counterclaim (Doc. No. 4).  Plaintiffs' Amended Complaint was filed September 18, 2012 which added a state breach of contract claim against Defendants based on Defendants' violation of a Stipulation and Order entered in Plaintiffs' state court action.  In Plaintiffs' state court action, Plaintiffs also sought to have Gates appointed receiver of the corporation.  A

Shareholder Agreement among the corporation's shareholders requires all directors vote in favor of all resolutions and corporate matters approved by the Pawlaks and against any opposed by the Pawlaks.

While the case was pending in state court, in order to resolve Plaintiffs' request that a receiver be appointed, the parties entered into a Stipulation and Order so ordered by the presiding justice, Hon. John A. Michalek, on August 29, 2012, which provided that during the pendency of the litigation, Plaintiffs shall have access to the corporation's financial records, accounts and credit card statements, the parties agree to the amount and payment of bonuses, or commissions to the parties, and that "all Plaintiffs and Defendants must agree to any adjustment to the salary of any of the Plaintiffs or Defendants before such adjustment shall take effect" ("the Stipulation and Order").  Plaintiffs allege that on September 14, 2012, Defendant Thomas Pawlak terminated Kramer as an employee of the corporation in violation of the Stipulation and Order.  The Stipulation and Order also provides that "nothing in this Stipulation and Order shall preclude or limit in any way any and all rights the parties enjoy under New York law, including New York State Business Corporations Laws and/or the by-laws or amended stockholder agreement of Armor Electric, and the parties expressly preserve any such rights by entering into this Stipulation."  Under Article 12 of the Amended Shareholder Agreement shareholders are prohibited from employment with another business within 200 miles of the corporation's offices on Elk Street in Buffalo that competes with the business of the corporation while employed by the corporation, a shareholder of the corporation and for three years following termination of the shareholders' employment with the corporation.

In support of Kramer's motion, Kramer filed the Plaintiff Richard J. Kramer's Memorandum of Law in Support of His Motion for a Temporary Restraining Order, Preliminary Injunction, and an Order of Contempt (Doc. No. 7-1) ("Kramer's Memorandum") together with Exhibits A - B ("Kramer's Exh(s) ___"), the Declaration of Richard Kramer ("Kramer Declaration") with Exhibits A and B ("Kramer Declaration Exh.(s) ___") and the Declaration of Reetuparna Dutta, Esq. in Support of Plaintiff's Motion for a Temporary Restraining Order, Preliminary Injunction, and an Order of Contempt (Doc. No. 7-4) ("Dutta Declaration") along with Exhibits A - C ("Dutta Declaration Exh(s). ___").

A hearing on Kramer's motion was conducted before the undersigned on September 19, 2012 (Doc. No. 10) ("the hearing").  Following the hearing, at the court's invitation, Kramer filed on September 19, 2012, Plaintiff Richard J. Kramer's Supplemental Memorandum of Law in Support of His Motion for a Temporary Restraining Order, Preliminary Injunction and an Order of Contempt (Doc. No. 11) ("Kramer's Supplemental Memorandum"), a Supplemental Declaration of Richard Kramer (Doc. No 11-1) ("Kramer Supplemental Declaration") and a Supplemental Declaration of Reetuparna Dutta, Esq. (Doc. No. 11-2) ("Dutta Supplemental Declaration").  On September 20, 2012, Defendants filed Defendants' Memorandum of Law in Opposition to Plaintiff Richard Kramer's Motion for a Temporary Restraining Order, Preliminary Injunction and an Order of Contempt (Doc. No. 12) ("Defendants' Memorandum"), a Declaration of Thomas Pawlak in Support of Defendants' Memorandum of Law in Opposition to Plaintiff Richard Kramer's Motion for a Temporary Restraining Order, Preliminary Injunction and an Order of Contempt (Doc.

5

No. 12-1) ("Pawlak Declaration") attaching an Exhibit A ("Exh. A to Pawlak Declaration"), a Declaration of Fred Schmitt in Support of Defendants' Memorandum of Law in Opposition to Plaintiff Richard Kramer's Motion for a Temporary Restraining Order, Preliminary Injunction and an Order of Contempt (Doc. No. 12-2) ("Schmitt Declaration") and a Declaration of Steven K. Long, Esq. in Support of Defendants' Memorandum of Law in Opposition to Plaintiff Richard Kramer's Motion for a Temporary Restraining Order, Preliminary Injunction and an Order of Contempt (Doc. No. 12-3) ("Long Declaration") attaching Exhibit A ("Long Declaration Exh. A").  Further oral argument was deemed unnecessary.  Based on the following, Kramer's motions for a temporary restraining order, preliminary injunction and contempt should be DENIED; Kramer's motions for expedited hearings are DISMISSED as moot.

## DISCUSSION

The criteria for granting a temporary restraining order pursuant to Fed.R.Civ.P. 65(b) ("Rule 65(b)") or a preliminary injunction pursuant to Fed.R.Civ.P. 65(a) ("Rule 65(a)") are the same.  *Neopost USA, Inc. v. McCabe*, 2011 WL 4368447, *3 (D.Conn. Sep't 19, 2011) (quoting *Citigroup Global Markets, Inc. v. VCG Opportunities Master Fund Limited*, 598 F.3d 30, 35 (2d Cir. 2010).  A party seeking either form of preliminary equitable relief must "show '(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'"  *Citigroup Global Markets, Inc.*, 598 F.3d at 35 (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)).

The injunctive relief requested must also be shown to be "'in the public interest.'"
*Carlson v. Medco Health Solutions, Inc.*, 2011 WL 3800017, *4 (W.D.N.Y. Aug. 29,
2011) (Arcara, J.) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20
(2008)).  It is "well-settled" that a showing of irreparable harm is a prerequisite for relief
pursuant to both Rule 65(a) and 65(b).  *Neopost USA, Inc.*, 2011 WL 4368447, *3.  To
qualify as irreparable, the requisite harm must be "actual and imminent, not remote and
speculative, and not adequately compensable by money damages." *Id.* (citing cases).
The party seeking injunctive relief carries the burden of establishing each of these
factors by a preponderance of the evidence.  *Carlson,* 2011 WL 3800017, *4 (citing
*Procter & Gamble Co. v. Ultreo, Inc.*, 574 F.Supp.2d 339, 344 (S.D.N.Y. 2008)).  "The
irreparable harm requirement is the most important factor in determining whether
preliminary injunct[ive] [relief] should issue." *Chapman v. South Buffalo Railway
Company*, 43 F.Supp.2d 312, 318 (W.D.N.Y. 1999) (Arcara, J.) (bracketed material
added).  Moreover, absent "a showing of irreparable harm, it is not necessary to
examine the second prong of the preliminary injunction requirements." *Id.* at 318 (citing
*Shady v. Tyson*, 5 F.Supp.2d 102, 109 (E.D.N.Y. 1998)).

Further, as applicable to the case at bar, termination from employment alone
does not constitute irreparable injury.  *See Moore v. Consolidated Edison Co. of New
York, Inc.*, 409 F.3d 506, 511 (2d Cir. 2005) (holding negative employment performance
evaluation that caused plaintiff to fear termination of employment was not an irreparable
injury for purposes of preliminary injunction because termination of employment was
insufficient); *Chapman,* 43 F.Supp.2d at 318 (citing *Adamsons v. Wharton*, 771 F.2d 41,
43 (2d Cir. 1985); *Shady,* 5 F.Supp.2d at 109.

"In order for an employment discharge to rise to the level of an irreparable harm the plaintiff must demonstrate the following:

> [That he] (1) has little chance of securing future employment; (2) has no personal or family resources; (3) has no private unemployment insurance; (4) is unable to finance a loan privately; (5) is ineligible for public assistance; and (6) there are no other compelling circumstances weighing heavily in favor of interim relief.

*Chapman*, 43 F.Supp.2d at 318 (quoting *Shady*, 5 F.Supp.2d at 109) (bracketed material in original).

To meet this exception to the irreparable harm prerequisite, a high burden is placed on a plaintiff seeking such relief.   "In essence, the plaintiff must quite literally find himself being forced into the streets or facing bankruptcy before a court can enter a finding of irreparable harm." *Chapman*, 43 F.Supp.2d at 318 (quoting *Shady*, 5 F.Supp.2d at 109 (additional quotation marks and citation omitted)).

Here, Kramer contends that, as a result of his recent termination, as required by the Non-Competition Agreement, (part of the Shareholders Agreement), his future employment is limited to machine shops located more than 200 miles from Buffalo which do not compete with Armor Electric for the next three years.  Kramer's Memorandum at 4.  More specifically, Plaintiff states that because his past and extensive experience as a machinist with Armor Electric does not include familiarity with modern computerized machinery used for machining services, utilized by "nearly every business that currently performs machining services," Kramer Declaration ¶ ¶ 6-7, and because Kramer's skills are limited to "industrial engine and crane repairs," *id.* ¶ 8, Defendants' termination effectively renders Kramer unemployable as a machinist and thus incapable of gainful employment.  *Id.* ¶ 9.  While lacking in particulars, Kramer

appears to aver that the advanced computer machining technology he describes in his Supplemental Declaration is not used in the "industrial engine and crane repair industry," like Armor and its direct competitors, thus limiting his employment opportunities to Armor and such competitors.  Kramer Supplemental Declaration ¶ ¶ 5, 8.

Defendants dispute Kramer's assertion regarding Kramer's employability as an experienced machinist pointing out that Armor Electric has few competitors and that Kramer's skills qualify Kramer for a wide range of "tool and dye [*sic*]" related work including "<u>general</u> machining companies,"  Pawlak Declaration ¶ 12 (underlining in original), "are not limited to electric motors and cranes and Plaintiff's skills enable Plaintiff to be employed in <u>general</u> machining companies."  *Id.*  Kramer fails to provide the court with any opinion by a vocational economist or other expert supporting Kramer's broad assertions regarding the limited scope of his marketable skills as a professional machinist.  Thus, even if, as Kramer argues, Defendants' termination without cause renders the Non-Competition Agreement unenforceable under New York law, Kramer's Supplemental Memorandum at 7 n. 24 (citing *Grassi & Co., CPAs, P.C. v. Janover Rubinroit, LLC*, 918 N.Y.S.2d 503, 505 (2d Dep't 2011) (termination without cause destroys mutuality rendering non-compete agreement unenforceable), such contention, if correct, not only undermines Kramer's claimed irreparable harm but must await any attempt by Defendants to enforce the Non-Competition Agreement.  Thus, Kramer's claim of irreparable harm based on the unavailability of adequate money damages, resulting from any future attempt by Defendants to enforce the Non-Competition Agreement, is premature.  *See Neopost USA, Inc.,* 2011 WL 4368447, *3

(irreparable harm must be "actual _and_ imminent") (underlining added).

Nor, significantly, does Kramer make any effort to satisfy the requisites for application of the narrow exception to the rule that mere termination does not demonstrate Kramer has suffered irreparable injury not compensable by money damages, which Kramer seeks, Amended Complaint at 23-24, including that, absent injunctive relief prohibiting Kramer's termination without maintaining Kramer's salary during the pendency of the action, Kramer will become effectively destitute.  _See Carlson,_ 43 F.Supp.2d at 318 (citing cases).  As such, Kramer has failed to meet his burden to demonstrate that in the absence of a temporary restraining order or preliminary injunction, Kramer will suffer irreparable harm not subject to compensation by an award of money damages should Kramer succeed on any claim for which money damages may be awardable.  _Chapman_, 43 F.Supp.2d at 318, and the court need not address Kramer's burden to establish a likelihood of success on the merits of Plaintiffs' claims.  _Id._

Additionally, Kramer's assertion, as a basis for preliminary relief and Kramer's request for a finding of contempt against Defendants, that because the parties entered into the Stipulation and Order while the matter was being litigated in state court, such Stipulation and Order precludes Kramer's termination without continuation of Kramer's present salary payable by Armor Electric for the pendency of this case, is without merit. As relevant, the Stipulation and Order provides that "[d]uring the pendency of this litigation, all Plaintiffs and Defendants must agree to any adjustment to the salary of any of the Plaintiffs or Defendants before such adjustment shall take effect."  Dutta Declaration, Exh. A ¶ 6.  Kramer contends that by terminating Kramer, Defendants have

unilaterally decreased Kramer's salary to zero thus violating the express language of

the Stipulation and Order.  Kramer's Memorandum at 3-4.  However, stipulations, like

other agreements, are to be construed in accordance with the ordinary meaning of the

actual language used by the parties.  *See Werner v. Katal Country Club*, 660 N.Y.S.2d

866, 868 (3d Dep't 1996) (applying rule that unambiguous terms of contract must be

given plain and ordinary meaning to stipulation.  Salary is compensation paid to an

employee based on employment.  *See* N.Y. Labor Law § 517 (defining "remuneration"

to including every form of compensation, including salaries, commissions, and bonuses,

paid by an employer to his employee).  Therefore, upon Kramer's termination, an action

Kramer's attorney conceded was not prohibited by the Stipulation and Order, Dutta

Supplemental Declaration ¶ 3, Kramer was no longer an employee of Armor Electric

and as such Kramer was not thereafter entitled to compensation absent an express

agreement to that effect.  *See Murphy v. American Home Products Corporation*, 448

N.E.2d 86, 89 (N.Y. 1983) (recognizing "long-established" rule that employment for

"indefinite term" is terminable "for any reason or no reason at all.").  A fair reading of the

Stipulation and Order fails to reveal any such agreement.

It may well be the fact that Kramer and his attorneys who participated in the

drafting of such a limitation on what Kramer now concedes was a power retained by

Defendants believed the Stipulation and Order meant to place an absolute restriction on

Defendants' power to terminate any Plaintiff during the pendency of the litigation, but

simply, that is not what it says.  *Werner*, 660 N.Y.S.2d at 868 (requiring unambiguous

terms of agreement be given "plain and ordinary meaning"); *see Cucchi v. New York

City Off-Track Betting Corporation*, 818 F.Supp. 647, 650 (S.D.N.Y. 1993) (holding an

at-will employment arrangement is not contractual and does not provide for employment protection in the absence of an employment contract).  Moreover, as Defendants point out, the Stipulation and Order also reserves to Defendants the authority to manage the corporation in accordance with its by-laws and New York law.  Defendants' Memorandum at 5 (citing Stipulation and Order ¶ 8).  The purpose of the Stipulation and Order was to assure Plaintiffs that the corporation's funds would be properly used while the case was pending, thereby obviating the need for a receivership provisional remedy as Plaintiffs had then requested while the case was before Justice Michalek. Defendants' Memorandum at 5 n. 15 (citing to "Plaintiff's Memorandum in Support of Plaintiffs' Order to Show Cause Seeking the Appointment of a Temporary Receiver of [*sic*] a Preliminary Injunction, August 3, 2012" (Doc. No. 1-9 at 2-6) (requesting appointment of Plaintiff Gates as receiver to safeguard the company's funds and assets against Plaintiffs' alleged improper transfer of funds and conversion of assets)).  A careful review of Plaintiffs' request to Justice Michalek reveals it is devoid of any reference to the risk that any plaintiff may be terminated by Defendants in Defendants' discretion.  It is therefore highly implausible that Defendants would have acquiesced in Kramer's present interpretation of the Stipulation and Order, particularly paragraph 6 on which Kramer specifically relies, in the absence of express language restricting Defendants' authority to terminate any Plaintiff, and Kramer's present construction of this provision is unfounded.  Accordingly, although the Stipulation and Order continued in effect following removal, *see* 28 U.S.C. § 1450 (following removal prior state court orders remain in effect until modified or annulled by district court), and was therefore in effect when Kramer was terminated on September 14, 2012, the Stipulation and Order

provides no ground for preliminary equitable relief or a finding of contempt as Kramer requests.

## CONCLUSION

Based on the foregoing, Kramer's motion (Doc. No. 7) should be DENIED; Kramer's motions for expedited hearings (Doc. Nos. 8 and 9) are DISMISSED as moot.

Respectfully submitted,

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

SO ORDERED as to Kramer's
motions for expedited hearings.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated: September 26, 2012
        Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiffs and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:        September 26, 2012
             Buffalo, New York